557 S.E.2d 787

## In re KENNA HOMES COOPERATIVE CORPORATION.

### No. 29644.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 23, 2001.

Decided Dec. 10, 2001.

---

Samuel F. Hanna, Esq., Hanna Law Office, Charleston, for J.L. & Bernice Jessup.

Larry G. Kopelman, Esq., Law Office of Larry Kopelman & Assoc., Charleston, for Kenna Homes.

MAYNARD, Justice.

In this declaratory judgment action, the appellants, J.L. Jessup, Jr. and Bernice Jess- up, appeal from the November 15, 2000 order of the Circuit Court of Kanawha County in which the circuit court found that Rule 21 of the Rules and Regulations For Occupancy of Kenna Homes Cooperative Corporation, the appellee, does not violate the Federal Fair Housing Act, 42 U.S.C. §§ 3601—3631 (1994), or the West Virginia Fair Housing Act, W.Va.Code §§ 5–11A–1—5–11A–20, either on its face or as it was applied to the Jessups. After consideration of the issues, we affirm the circuit court.

## I.

### FACTS

The appellants, J.L. Jessup, Jr. and his wife, Bernice Jessup, purchased a housing unit of the appellee, Kenna Homes Cooperative Corporation, ("Kenna Homes") in 1984. Kenna Homes is a West Virginia corporation which owns and operates a cooperative housing project located in South Charleston. The housing project consists of 400 apartments. Common areas and buildings are owned by Kenna Homes but the individual apartments are owned by residents of the apartments who are stockholders in the corporation.

Pursuant to Kenna Homes' corporate char- ter and by-laws, a prospective stockholder must apply for ownership of a Kenna Homes apartment, and his or her application is voted on by the current stockholders of Kenna Homes. Prior to this vote, prospective stockholders are given a copy of the "Rules & Regulations For Occupancy Of Kenna Homes," promulgated by the corporation's board of directors,[1] and must aver in an open meeting before the stockholders that, if granted ownership and residence of a Kenna Homes apartment, he or she agrees to abide by these rules and regulations.

For many years, owners of Kenna Homes' apartments were allowed to have pets. How- ever, effective January 2, 1996, the stock- holders voted to request the board of di- rectors to enact a rule phasing out animals and/or reptiles at Kenna Homes. As a re- sult, the board of directors enacted Rule 21

---

**1.** Kenna Homes' bylaws provide for a board of directors composed of nine individuals, all of whom serve three year terms with three directors elected each year.

of the Rules & Regulations For Occupancy Of Kenna Homes which provides:

> Effective January 2, 1996, stockholders voted to phase out animals and/or reptiles in Kenna Homes. As animals and/or reptiles die, leave or are otherwise disposed of, they shall not be replaced; also, sale of stock in the future will be with the understanding that animals and/or reptiles will not be allowed. There is excepted, however, seeing-eye and hearing-aide dogs or any other trained dog, provided the animal is properly trained and certified for the particular disability, licensed and provided further that the stockholder or resident has a certificate or authorization request from a licensed physician specializing in the field of subject disability.

At the time the Jessups moved into Kenna Homes, they owned a Yorkie dog. The Yorkie died in 1997, after the enactment of Rule 21, and the Jessups obtained two new dogs. The Jessups applied to the Kenna Homes board of directors for permission to keep these dogs in their apartment as a reasonable accommodation of their disabilities. In support of their application, the Jessups presented evidence that Mr. Jessup has been diagnosed with Stills Disease,[2] high blood pressure, and depression. Mrs. Jessup suffers from "elevated liver enzymes, [peptic ulcer disease], palpitations and super ventricular [sic] tachycardia,[3] as well as Diabetes Mellitus Type 2." They also presented physicians' statements, one of which indicated that "it is a medical necessity for [the Jessups] with their present health ailments to be able to keep their pets to suppress both the physical and mental need for companionship as well as the confinement due to the various illnesses." The board rejected the Jessups' request to keep the two dogs in their apartment.

As a result of controversy surrounding Rule 21, Kenna Homes filed a Petition for Declaratory Judgment in the Circuit Court of Kanawha County to determine whether the rule is in compliance with the applicable federal and state law and, if not, to seek guidance on the valid limitation of animals and reptiles in the Kenna Homes Apartments. The Jessups subsequently sought and were granted intervenor status in the declaratory judgment action.

In its November 15, 2000 order, the circuit court ruled that Rule 21 is in compliance with both federal and state law. The court reasoned:

> None of the [Jessups'] physician statements correlate dogs, generally, or the Jessups' two dogs, specifically, to the claimed disabilities. Nor has there been any link by expert affidavit or other offering that these two dogs are a necessary reasonable accommodation. The "necessity" for these dogs as indicated by the physicians is not related to any specific disability and is not related to the Jessups' ability to stay or live at Kenna Homes. In other words, even if one accepts the physician's statements as true, the Jessups can live and function at Kenna Homes without their dogs.

The Jessups now appeal this order.

## II.

### STANDARD OF REVIEW

 "A circuit court's entry of a declaratory judgment is reviewed *de novo.*" Syllabus Point 3, *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995). "[A]ny determinations of fact made by the circuit court in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard." *Id.,* 195 W.Va. at 612, 466 S.E.2d at 463.

In the instant case, we are asked to review whether Rule 21 of Kenna Homes' occupancy rules violates the federal or state fair housing acts.

## III.

### DISCUSSION

The Jessups assert that Rule 21 is facially invalid under the Federal Fair Housing Act

---

2. Stills disease is juvenile rheumatoid arthritis. *Taber's Cyclopedic Medical Dictionary* 1834 (Clayton L. Thomas, ed. 18th ed.1997).

3. Tachycardia is "an abnormal rapidity of heart action, usually defined as a heart rate greater than 100 beats per minute in adults." *Taber's Cyclopedic Medical Dictionary, supra,* 1899.

because it fails to provide for a reasonable accommodation *unless* the dogs at issue are properly trained, certified for a particular disability, licensed, and an authorization request from a physician specializing in the field of the subject disability is produced. Therefore, say the Jessups, Rule 21 is more restrictive than federal law which does not mandate that service dogs be specially trained or certified, or that a licensed physician authorize the need for the animal.

Kenna Homes responds that Rule 21 is fair and objective and provides for necessary reasonable accommodations. Also, asserts Kenna Homes, the Jessups have failed to meet their burden of showing that their dogs are necessary to afford them an equal opportunity to use and enjoy their apartment. Finally, Kenna Homes argues that the case law interpreting the Federal Fair Housing Act recognizes the individual training of an animal as a valid factor in determining whether the animal is a service animal.[4]

It is undisputed that Kenna Homes has a general right to prohibit pets.[5] However, this right is limited by federal and state laws which provide that a disabled tenant has the right to keep a service animal to ameliorate the effects of his or her disability. The Federal Fair Housing Act, at 42 U.S.C. § 3604(f)(2)(A) (1994) ("FFHA"), makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of ... that person[.]" According to subsection (3)(B), discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and

enjoy a dwelling[.]" For purposes of the act, " '[h]andicap' means ... (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment[.]" 42 U.S.C. § 3602(h) (1994).

The West Virginia Fair Housing Act (WVFHA) is found at W.Va.Code §§ 5–11A–1 to 5–11A–20. The language of the relevant sections of the act either follow very closely or is verbatim to the language in the federal act. W.Va.Code § 5–11A–5(b) (1992) makes it unlawful "[t]o discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, ancestry, sex, familial status, blindness, handicap or national origin[.]" Discrimination includes "[a] refusal to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" W.Va.Code § 5–11A–5(f)(3)(B) (1992). Finally, W.Va.Code § 5–11A–3(g)(1) (1992) provides that " '[h]andicap' means, with respect to a person: (1) A physical or mental impairment which substantially limits one or more of such person's major life activities; (2) A record of having such an impairment; or (3) Being regarded as having such an impairment[.]"

Our practice is to,

look[ ] to federal discrimination law dealing with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to e–17 (1994) when interpreting provisions of our state's human rights statutes....

---

**4.** The West Virginia Human Rights Commission filed a brief with this Court, as amicus curiae, on behalf of the Jessups. We appreciate the Commission's input and we have considered it in making our decision.

The Commission urges, as one of its arguments, that a declaratory judgment action is inappropriate in the instant case because it deprives individuals of the opportunity to have requests for service animal accommodations considered in the light of particularized facts and circumstances. We reject this argument.

**5.** Kenna Homes is a corporation under the West Virginia Corporation Act, W.Va.Code § 31–1–1, *et seq.* According to W.Va.Code § 31–1–8(1), corporations under the act have the power "[t]o make and alter bylaws, not inconsistent with its articles of incorporation or with the laws of this state, for the administration and regulation of the business and affairs of the corporation." Therefore, general corporate law supports the ability of the stockholders and board of directors of Kenna Homes to enact and enforce a no animal policy.

Just as Title VII is the federal analogue to our Human Rights Act, the Federal Fair Housing Act, 42 U.S.C. § 3601–3631 (1994) is the precedent federal act that served as the genesis of our state fair housing act. Based on this Court's long-standing practice of applying the same analytical framework used by the federal courts when deciding cases arising under the Human Rights Act, decisions involving the Federal Fair Housing Act are equally valid precedent provided that the statutory language under consideration is similar. *Human Rights Com'n v. Wilson Estates,* 202 W.Va. 152, 158, 503 S.E.2d 6, 12 (1998) (citations omitted). As stated above, the provisions of the State act at issue here, W.Va. Code §§ 55–11A–5(b), 55–11A–5(f)(3)(B), and 55–11A–3(g)(1), are virtually identical to their federal counterparts. Accordingly, we will look to federal precedent to decide the case before us.

 Federal courts have described the FFHA as,

a broad mandate to eliminate discrimination against and equalize housing opportunities for disabled individuals. The House Report on the [FFHA] identifies a "clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream," H.R.Rep. No. 711, 100th Cong., 2d Sess. 18, U.S.Code Cong. & Admin.News 1988, pp. 2173, 2179, and adds that "the right to be free from housing discrimination is essential to the goal of independent living."

*Bronk v. Ineichen,* 54 F.3d 425, 428 (7th Cir.1995). Toward this end, "[t]he [FFHA] . . . requires an accommodation for persons with handicaps if the accommodation is (1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." *Bryant Woods Inn v. Howard County, Maryland,* 124 F.3d 597, 603 (4th Cir.1997) (citation omitted). To establish a *prima facie* case under the FFHA, the plaintiff is required to show that,

(1) [plaintiff] suffers from a handicap as defined in 42 U.S.C. § 3602(h); (2) defendants knew of [plaintiff's] handicap or should reasonably be expected to know of

it; (3) accommodations of the handicap 'may be necessary' to afford [plaintiff] an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation.

*U.S. v. California Mobile Home Park Management Co.,* 107 F.3d 1374, 1380 (9th Cir. 1997) (citations omitted).

 The FFHA requires an accommodation only if a person suffers from a "handicap," which is a physical or mental impairment that substantially limits one or more major life activities, such as the ability to work, walk, talk, see, or hear. 42 U.S.C. § 3602(h); and 29 C.F.R. § 1630.2(i). Second, only accommodations that are "reasonable" are required. "[S]ome accommodations may not be reasonable under the circumstances[.]" *Bronk,* 54 F.3d at 429. "The requirement of reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to the defendant) and benefit (to the plaintiff) merit consideration as well." *Id.* (footnote and citations omitted). Third, the FFHA requires the accommodation to be "necessary." "[T]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." *Id.* The necessity element "requires the demonstration of a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person. This requirement has attributes of a causation requirement." *Bryant Woods Inn,* 124 F.3d at 604. Further, the equal opportunity requirement means that the FFHA "does not require accommodations that increase a benefit to a handicapped person above that provided to a nonhandicapped person with respect to matters unrelated to the handicap." *Id.* Finally, "[t]he plaintiff bears the burden of proving each of these . . . elements by a preponderance of the evidence." *Id.,* 124 F.3d at 604.

Reasonable accommodation under the FFHA and the WVFHA may mean that a

disabled person can own a "service animal"[6] where animals are otherwise prohibited. Under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* [1990], a service animal is defined as "any guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability[.]" 28 C.F.R. § 36.104 (2001). According to regulations promulgated by the Secretary of Housing and Urban Development concerning what constitutes a reasonable accommodation under the FFHA:

> A blind applicant for rental housing wants to live in a dwelling unit with a seeing eye dog. The building has a *no pets* policy. It is a violation of § 100.204 for the owner or manager of the apartment complex to refuse to permit the applicant to live in the apartment with a seeing eye dog because, without the seeing eye dog, the blind person will not have an equal opportunity to use and enjoy a dwelling.[7]

24 C.F.R. 100.204 (2001) (footnote added).[8] Similarly, West Virginia regulations indicate:

> It is unlawful for any person to fail or refuse to show, rent, or lease any housing accommodations or real property to a person with a disability who is required to be accompanied by a guide animal or by an attendant; or to evict any person

for this reason. Policies which restrict the availability of housing accommodations to persons without pets shall be void with respect to persons with a disability who require guide animals.

77 C.S.R. § 1–6.6 (1994).[9]

There are several federal cases which deal with whether an animal constitutes a reasonable accommodation under the FFHA. In *Bronk v. Ineichen*, 54 F.3d 425 (7th Cir. 1995), two profoundly deaf women sued their former landlord under the FFHA for refusing to allow them to keep a dog in their rented townhouse. The jury found against the plaintiffs. The United States Court of Appeals for the Seventh Circuit reversed and remanded for a new trial. The court found "ample evidence to support the determination of no liability," but was "concerned that the tendered jury instructions may have confused jury members by unnecessarily conflating local, state, and federal law." *Id.*, 54 F.3d at 427. Specifically, the *Bronk* court explained:

> Were it acknowledged by the parties in this case that Pierre [the dog at issue] was a hearing dog providing needed assistance to the plaintiffs, this case might be susceptible to determination as a matter of law. Balanced against a landlord's economic or aesthetic concerns as expressed in a no-

---

**6.** These animals are also referred to as "assist animals" or "support animals." This opinion will use the term "service animals."

**7.** In addition to guide dogs for the visually impaired, there are several other types of service dogs. For example, hearing dogs are trained to alert a hearing impaired individual when a sound, such as a knock on the door, occurs. There are assistance dogs which are trained to aid mobility-impaired individuals by performing such tasks as carrying, fetching, opening doors, ringing doorbells, activating elevator buttons, steadying a person while walking, helping a person up after the person falls, etc. An "SsigDog" is trained to assist persons with autism by alerting its partner to distracting repetitive movements common among those with autism, and thus allowing the person to stop the movement. Also, an autistic person may have difficulty with sensory input and need the same support services from a dog that a dog might give to a person who is blind or deaf. Finally, there are Seizure Response Dogs which are trained to assist a person with a seizure disorder. For example, the dog may stand guard over the person during a seizure, or the dog may go for help. A

few dogs have learned to predict a seizure and warn the person in advance. *See* The Board of Regents of the University of Wisconsin System, "University of Wisconsin Service Animal Policy," (1999), *available at* http://www.wisc.edu/adac/wiscinfo 12020114.-html. This list is not intended to be exhaustive.

**8.** *See also*, 28 C.F.R. 36.302(c) (2001) ("Generally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability"); and 24 C.F.R. 960.705(a) (2001) (concerning animals that assist, support or provide service to persons with disabilities in public housing). Although the instant case does not involve public housing, these regulations are helpful in interpreting reasonable accommodation provisions in the FFHA.

**9.** Similarly, 77 C.S.R. § 1–7.5 (1994) provides that "[i]ndividuals with disabilities have the right to be accompanied by a guide animal in any place of public accommodation."

pets policy, a deaf individual's need for the accommodation afforded by a hearing dog is, we think, *per se* reasonable within the meaning of the statute. Pierre's skill level, however, was hotly contested, and there was ample evidence to support a jury determination in favor of the defendant. Other than their own protestations and self-serving affidavits which were undermined at trial, plaintiffs offered no evidence that Pierre had ever had any discernible skills. The defendant, on the other hand, introduced evidence that Pierre was not a hearing dog—the testimony of plaintiffs' former roommate and the defense expert—and impeached plaintiffs on a number of aspects of their testimony including the claim that Pierre had been certified at a training center. Given this level of uncertainty and conflicting evidence about Pierre's training level, it was well within the province of a rational jury to conclude that Pierre's utility to plaintiffs was as simple house pet and weapon against cranky landlord, not necessarily in that order. If Pierre was not necessary as a hearing dog, then his presence in the townhouse was not necessarily a reasonable accommodation.

*Id.*, 54 F.3d at 429 (footnote omitted). The court's difficulty with the jury instructions was that the trial court combined requirements of local, state, and federal law which may have lead the jury to erroneously infer that without school training a dog cannot be a reasonable accommodation. The court explained that professional credentials may be a part of the sum in determining whether a dog is a reasonable accommodation, but "they are not its *sine qua non.*" *Id.*, 54 F.3d at 431.

In *Green v. Housing Authority of Clackamas County*, 994 F.Supp. 1253 (D.Or.1998), the United States District Court for the District of Oregon granted summary judgment on behalf of a deaf plaintiff in his FFHA claim against his landlord for refusing to allow him to have a service dog. The dispute was whether plaintiff's hearing assistance dog was, in fact, a hearing assistance dog or simply a household pet. The landlord argued that the dog was not an appropriate accommodation for the plaintiff's disability

because the plaintiff was unable to produce any "verification" that the dog was a "certified" hearing assistance trained animal. *Green*, 994 F.Supp. at 1255. The district court rejected this argument, and explained,

there is no federal or Oregon certification process or requirement for hearing dogs, guide dogs, companion animals, or any type of service animal. There is no federal or Oregon certification of hearing dog trainers or any other type of service animal. The only requirements to be classified as a service animal under federal regulations are that the animal be (1) individually trained, and (2) work for the benefit of a disabled individual. There is no requirement as to the amount or type of training a service animal must undergo. Further, there is no requirement as to the amount or type of work a service animal must provide for the benefit of the disabled person. 28 C.F.R. § 36.104. The regulations establish minimum requirements for service animals.

Plaintiffs claim that the dog underwent individual training at home and was also trained by a professional trainer. Plaintiffs state that the dog alerted [plaintiff] to several sounds, including knocks at the door, the sounding of the smoke detector, the telephone ringing, and cars coming into the driveway. [The landlord's] requirement that an assistance animal be trained by a certified trainer of assistance animals, or at least by a highly skilled individual, has no basis in law or fact. There is no requirement in any statute that an assistance animal be trained by a certified trainer.

*Green*, 994 F.Supp. at 1255–1256.

Finally, in *Janush v. Charities Housing Development Corp.*, 169 F.Supp.2d 1133 (N.D.Cal.2000), the plaintiff, who suffered from a severe mental health disability, was denied permission to have two birds and two cats. She brought suit under the FFHA and alleged that the animals lessened the effects of her disability by providing her with companionship and were necessary to her mental health. The court denied the defendant's

motions to dismiss and for summary judgment, and reasoned:

> The legal basis for defendants' motion appears to be the assertion that California's definition of a "service dog" should be read into the federal statute to create a bright-line rule that accommodation of animals other than service dogs is per se unreasonable. *See* Cal. Civ.Code. § 54.1(b)(6)(C)(iii). Although the federal regulations specifically refer to accommodation of seeing-eye dogs, there is no indication that accommodation of other animals is per se unreasonable under the statute. In fact, the federal regulations provide a broad definition of service animals. "Service animal means any guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability. . . ." 28 C.F.R. § 36.104.

*Janush,* 169 F.Supp.2d at 1135–36 (footnote omitted).

We now consider the specific facts of this case in light of the principles set forth above. In its ruling below, the circuit court assumed that the Jessups suffer from a "handicap" under the FFHA. Our own review of the record reveals nothing which indicates that this finding is clearly wrong. Instead, the record reveals that both Mr. and Mrs. Jessup suffer from conditions which most likely substantially impair their mobility. Accordingly, this Court presumes that the Jessups suffer from a "handicap" for the purpose of our analysis.

■ Contrary to the Jessups' claim, we believe that a requirement that a service dog be "properly trained" does not conflict with federal or state law. Federal regulations interpreting the ADA define a service animal as one that is individually trained. 28 C.F.R. § 36.104 (2001).[10] The court in *Green* stated as one of the requirements of a service animal that it be "individually trained." *Green,* 994 F.Supp. at 1256. Also, the *Bronk* court said that the evidence was sufficient to support a defense verdict where the jury could conclude from the evidence that the alleged service dog had no discernible skills as a hearing dog. Obviously, a dog cannot acquire discernible skills as a service dog without some type of training. While the courts in *Bronk* and *Green* did say that the FFHA does not require *professional* training, certainly some type of training is necessary to transform a pet into a service animal. Significantly, Rule 21 does not mandate "professional" training, only "proper" training. Therefore, we conclude that the requirement under Rule 21 that an alleged service dog be "properly trained" does not violate the FFHA or the WVFHA.

■ Second, the Jessups aver that the requirement in Rule 21 that a service dog be "certified for the particular disability" violates the FFHA and the WVFHA. As set forth above, federal case law holds that an animal does not have to have professional credentials in order to be a service animal under the FFHA. This is because there appear to be no uniform standards or credentialing criteria applied to all service animals or service animal trainers.[11] Further, there

---

10. Other definitions of "service animals" include: "animals trained to assist people with disabilities in the activities of normal living," University of Wisconsin Service Animal Policy (1999), *available at* http://www.wisc.edu/adac/wiscinfo 12020114.-html; "[a]ny animal/dog individually trained to do work or perform tasks for the benefit of a person with a disability," Delta Society, Service Animal/Service Dog Frequently Asked Questions (FAQS) (2001), *available at* http://www.deltasociety.org/dsb200.htm; and "dogs that are specially trained to help overcome specific limitations that a person with disabilities may have." Don Alfera, Scleroderma World Service Dogs (2000), *available at* http://www.sdworld.org/service/service.html.

11. *See* Delta Society, "Service Animal/Service Dog Consumer Information," *available at* http://www.deltasociety.org/dsb100.htm. However, attached to Kenna Homes' response to the petition for appeal is a copy of a certificate from National K–9 School For Dog Trainers in Columbus, Ohio. Therefore, while apparently there are no uniform professional certifications for all types of service dog trainers, professional certifications do exist for some. Accordingly, a person seeking to keep a service dog as a reasonable accommodation of his or her disability may be able to produce a professional certification.

is no federal certification process, *see Green, supra,* and we are aware of no West Virginia certification process, for any type of service animal. Absent uniform professional or legal standards of certification for service animals or service animal trainers, a requirement that a service dog be trained by a certified trainer, or certified by a governmental entity, would place too great a burden on disabled persons and would violate the FFHA and the WVFHA.[12] Therefore, read in its strictest sense, Kenna Home's certification requirement would appear to violate the federal courts' interpretation of the Federal Fair Housing Act.

 However, Kenna Homes indicated at oral argument its willingness to administer Rule 21 in a flexible manner, and this Court agrees that Rule 21 can be enforced in a way that would not violate the FFHA. Accordingly, we set forth several guidelines which should govern the issue of certification. A landlord or person similarly situated may require a tenant seeking to keep a service animal under the Federal Fair Housing Act, 42 U.S.C. §§ 3601 to 3631, and the West Virginia Fair Housing Act, W.Va.Code §§ 5–11A–1 to 5–11A–20, to demonstrate that he or she made a bona fide effort to locate a certifying authority and, if such authority is located, to subject the service animal to the specialized training necessary for such certification. If the tenant fails to locate a certifying authority, it is reasonable for the landlord or person similarly situated to attempt to locate a certifying authority and, if one is located, to require certification of the service animal. If neither the tenant nor the landlord or person similarly situated can locate a certifying authority after reasonable attempts to do so, it is reasonable for the landlord or person similarly situated to require that a recognized training facility or person certify that the service animal has that degree of training and temperament which would enable the service animal to ameliorate the effects of its owners disability and to live in its owner's household without disturbing the peace of mind of a person of ordinary sensibilities regarding animals.

 We do not believe that these guidelines are at odds with the provisions of Rule 21. The rule merely requires a service animal to be "certified for the particular disability." "Certification" simply means "[t]he formal assertion in writing of some fact." Black's Law Dictionary (6th ed.1990), 227. This Court determined above that it is not improper under the law to require that a service animal be "properly trained." Further, the burden is on the person claiming the need for a service animal as a reasonable accommodation to show that his or her animal is properly trained. In light of this, it is not unreasonable to require proof of proper training in the form of a written assertion by the dog's trainer that the dog has been trained to perform specific tasks.[13]

 Finally, the Jessups challenge the requirement in Rule 21 of a certificate or authorization request from a licensed physician specializing in the field of the subject disability. One of the two requirements to be classified as a service animal under the FFHA is that the animal work for the benefit of the disabled individual to ameliorate the effects of the disability so that the disabled person has an equal opportunity to use and enjoy his or her dwelling. As stated earlier, the necessity element "requires the demonstration of a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped

---

**12.** *See,* however, W.Va.Code § 5–15–4(c) (1994) of the State's "White Cane Law," concerning the equal right of blind and disabled persons to use public facilities, which provides that upon request the blind or disabled person shall "present for inspection credentials issued by an accredited school for training guide or support dogs."

**13.** Rule 21 also requires a service dog to be "licensed." This requirement is not discussed in detail in the briefs to this Court. We are aware of no special licensing provisions in West Virginia for service animals. Accordingly, we presume that Rule 21 merely requires that service dogs be licensed in the event that the municipality levies and collects an annual license tax upon the privilege of keeping a dog as a pet within the limits of the municipality. *See* W.Va.Code § 8–13–10 (1969).

person. This requirement has attributes of a causation requirement." *Bryant Woods Inn,* 124 F.3d at 604. In order to show that the disabled person needs the assistance of a service animal to ameliorate the effects of his or her specific disability, it is reasonable to require the opinion of a physician who is knowledgeable about the subject disability and the manner is which a service dog can ameliorate the effects of the disability. Absent any clear law to the contrary, we do not believe that this requirement violates the FFHA or the WVFHA.[14]

■ In addition, we recognize that a tenant may suffer from a disability, as defined by the FFHA and the WVFHA, which is not readily apparent to a landlord or a person similarly situated. As discussed above, a disability under the FFHA and the WVFHA includes not only obvious ones such as blindness or deafness but any impairment which substantially limits one or more major life activities, a record of having such an impairment, or being regarded as having such an impairment. Therefore, we hold that under the Federal Fair Housing Act, 42 U.S.C. §§ 3601 to 3631, and the West Virginia Fair Housing Act, W.Va.Code §§ 5–11A–1 to 5–11A–20, where a tenant suffers from a disability which is not apparent to a person untrained in medical matters, it is reasonable for a landlord or person similarly situated to require a second concurring opinion from a qualified physician selected by the landlord or person similarly situated to substantiate the tenant's need for a service animal.

■ Finally, we emphasize that the FFHA and the WVFHA require that the service animal be a *reasonable* accommodation. This means that under the Federal Fair Housing Act, 42 U.S.C. §§ 3601 to 3631, and the West Virginia Fair Housing Act, W.Va.Code §§ 5–11A–1 to 5–11A–20, a landlord or person similarly situated may require that a service animal not be a nuisance. For example, a vicious dog or one which howls and barks incessantly could be excluded, even if the animal were otherwise certified or trained. Also, a landlord or person similarly situated may require the owner of a service animal to maintain good sanitary conditions with respect to the service animal and to be financially responsible for any damage caused by the service animal.

■ In sum, we hold that the Federal Fair Housing Act, 42 U.S.C. §§ 3601 to 3631, and the West Virginia Fair Housing Act, W.Va.Code §§ 5–11A–1 to 5–11A–20, require that a service animal be individually trained and work for the benefit of a disabled person in order to be considered a reasonable accommodation of that person's disability. A person claiming the need for an alleged service animal as a reasonable accommodation of his or her disability has the burden of proving these requirements. Further, under the Federal Fair Housing Act, 42 U.S.C. §§ 3601 to 3631, and the West Virginia Fair Housing Act, W.Va.Code §§ 5–11A–1 to 5–11A–20, a landlord or person similarly situated may require a disabled tenant who asserts the need to keep an alleged service animal to

**14.** This requirement is consistent with this State's "Rules Regarding Discrimination Against Individuals With Disabilities." According to 77 C.S.R. § 1–3.1 (1994) concerning "Verification of Disability,"

If, at the time of public hearing, there is a question or dispute as to whether the complainant is an individual with a disability, or as to the nature of the impairment, the burden of proof shall be upon the complainant to present by reasonable medical opinions ... [t]he nature of the disability ... [a]ny limitations caused by said disability; and ... [a]ny restrictions upon the disabled individual's work activity[.]

We caution, however, that inquiries concerning the nature of a person's disability must be limited for the specific purpose set forth in Rule 21, i.e.,

the determination whether a person claiming that ownership of a service dog, as an exception to a "no pets" policy, is necessary as a reasonable accommodation of the person's disability. Otherwise,

It is unlawful for any person to make any written or oral record or inquiry, or require the completion of any application which seeks information concerning the disability of any prospective purchaser, tenant, or prospective occupant of any housing accommodations or real property unless such information is required by an agency of state or federal government and the person states clearly that the information requested is intended for use solely by the government agency.

77 C.S.R. § 1–6.3 (1994).

show that the animal is properly trained; to produce in writing the formal assertion of the trainer that the animal has been so trained; and to present a statement from a licensed physician specializing in the field of subject disability which certifies that the alleged service animal is necessary to ameliorate the effects of the tenant's disability.

The Jessups further assert, however, that Rule 21 is invalid as it was applied to them because they should be permitted to keep their two dogs as a reasonable accommodation under the FFHA and the WVFHA. We do not agree. As set forth above, the FFHA requires that an animal be individually trained in order to be a service animal. There is no evidence that the Jessups' dogs have been individually trained or have any discernible skills. Further, the Jessups have failed to show that their two dogs are necessary for them to have an equal opportunity to use and enjoy their apartment. As stated by the circuit court, "[t]he 'necessity' for these dogs as indicated by the physicians is not related to any specific disability and is not related to the Jessups' ability to stay or live at Kenna Homes." We agree.

 The evidence indicates that the dogs provide comfort and companionship to the Jessups. However, the same can be said of most household pets. Palliative care and the ordinary comfort of a pet are not sufficient to justify a request for a service animal under the FFHA and the WVFHA.[15] There is also evidence that the dogs stimulate Mr. Jessup to walk more regularly and for longer periods of time. Nothing, however, prevents Mr. Jessup from maintaining a healthy, active lifestyle without the dogs. We find, therefore, that the circuit court properly

found that Rule 21 does not violate the FFHA or the WVFHA as applied to the Jessups.[16]

This case is difficult because it requires the Court to balance the important but conflicting rights of people living in fairly close circumstances. The right to keep an animal must be balanced against the health interests of other tenants who may have serious allergies, emphysema, or other respiratory problems which may be aggravated by animal hair, fur, dander, feathers, droppings or parasites such as fleas and ticks. Further, this case should not be misused to permit a person to keep an animal as a mere pet when that animal is not, in fact, a bona fide service animal, properly trained or certified to accommodate a specific and genuine disability.

## IV.

## CONCLUSION

For the reasons stated above, we affirm the November 15, 2000 order of the Circuit Court of Kanawha County which found that Rule 21 of the "Rules Of Occupancy For Kenna Homes" does not violate state or federal law either on its face or as it was applied to the Jessups.

Affirmed.

---

**15.** We recognize that some chronic and severe psychoses, such as schizophrenia, can substantially restrict a person's ability to form and sustain human relationships of friendship, companionship, and affection. Research has shown that a companion pet can in some cases materially improve the quality of life of such persons. *See* Fuller Torrey, M.D., *Surviving Schizophrenia,* Harper Collins 1983, 3d ed. pp. 235–237. Nothing in this opinion would bar the balanced con-

sideration of a well-documented request for approval of a companion pet in such a case.

**16.** Finally, we note that Rule 21 refers specifically to service "dogs." While applicable federal regulations do not limit "service animals" to dogs, the literature we reviewed concerning different types of service animals refer solely to dogs. *See* footnote 6, *supra.* Accordingly, we do not believe that Rule 21 is invalid for this reason.