Alvaro J. ARNAL, Plaintiff,

v.

ASPEN VIEW CONDOMINIUM ASSO-
CIATION, INC., a Colorado nonprofit
corporation; Aspen Snowmass Care,
Inc. D.B.A. First Choice Properties &
Management, Inc., a Colorado corpo-
ration; Aspen Snowmass, LLC D.B.A.
First Choice Properties & Manage-
ment, a foreign limited liability com-
pany; Jack Smith, an Individual; and
Heather Vicenzi, an Individual; De-
fendants.

Civil Action No. 15–cv–
01044–WYD–MJW

United States District Court,
D. Colorado.

Signed December 27, 2016

Phyllis Ann Roestenberg, Phyllis A. Roestenberg, Esq., Law & Mediation, Denver, CO, for Plaintiff.

Debra J. Oppenheimer, HindmanSanchez, P.C., Lakewood, CO, John Kevin Bridston, Holland & Hart, LLP, Denver, CO, for Defendants.

**ORDER**

WILEY Y. DANIEL, SENIOR
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment (ECF No. 70), filed on March 2, 2016. The matter arises out of allegations by Plaintiff Alvaro J. Arnal ("Arnal"), that Aspen View Condominium Association, Inc. ("AVCA" or the "Association"), and Aspen Snowmass Care, Inc., D.B.A. First Choice Properties & Management, Inc. ("FCP") (collectively "Defendants"), acts constitute discrimination, retaliation, and interference with contract in violation of the Fair Housing Amendments Act of 1988 ("FHA") at 42 U.S.C. §§ 3601–3619. Defendants argue that Plaintiff cannot raise any genuine issue of material fact as to any element of their claim, and that Defendants are entitled to judgment as a matter of law. Accordingly, I will address the claims of discrimination, retaliation, and interference with contract under the FHA.

## II. BACKGROUND

At all times relevant, Arnal owned and continues to own, Unit 201 (the "Unit"), a two bedroom unit in the Aspen View Condominiums, together with co-owner Clinton Coerdt. On October 11, 2013, Arnal sent an email to Defendants, notifying the Association that he intended to lease his unit to a woman who had a service dog. (ECF No. 70–5). In his email, Arnal asked the Association about its policy regarding service dogs, in light of their no-pet policy. (*See* ECF No. 70–4, No–Pet Policy). The Association advised Arnal that it needed to seek legal counsel on the question. Arnal sent seven additional emails inquiring about the Association's decision between October 14, 2013 and November 13, 2013 to follow-up on his initial October 11, 2013 request. (ECF No. 83–3).

Arnal's tenant, Natasha MacArthur, leased and moved into the unit with her dog, Stevie Nicks, on November 22, 2013. (ECF No. 70–8). On December 24, 2013, Defendants provided a letter from the then AVCA President, stating its policy for service dogs, and a list of questions for anyone seeking an accommodation for a service dog to Arnal. (ECF No. 70–10). The letter instructed Arnal to provide information and documentation no later than January 6, 2014. Arnal sent a written reply to the Association on January 3, 2014, in which he identified MacArthur as the person requesting the accommodation, Stevie Nick's certification identification number, and the dog's breed and weight. (ECF No. 70–11). No additional information was provided at that time.

On January 8, 2014, two members of the Association's Board of Directors, Heather Vicenzi and Cliff Mohwinkel, met with Arnal, MacArthur and Stevie Nicks. During the interview, MacArthur orally disclosed the nature of her claimed disability and the claimed purpose of her dog for the first

time. The parties discussed getting a doctor's note from Dr. Niebur to substantiate the claimed disability and disability-related need for the dog. AVCA's President conveyed MacArthur's need for an "epilepsy alert dog," in an email to other Board members, and described the dog as "very sweet and well behaved. Very affectionate." (ECF No. 70–13).

On January 20, 2014, the Association, through its Board of Managers, sent Arnal a letter conditionally approving the use of a service dog named "Stevie" for MacArthur. (ECF No. 70–15). The decision, in pertinent part, was pending upon acceptable presentation of two documents: "1) Stevie's certification and evidence that he will be helpful in preventing seizures; [and] 2) Doctor's letter that certifies that Stevie is necessary to treat Natasha's condition even though Natasha is not with the dog for sizable chunks of time. Dr. Neibuhr [sic] was selected and is acceptable to the board." *Id.* (emphasis in original).

Further, the Board provided the following conditions: "1) Stevie must wear a leash with a service dog harness at all times when it is outside unit # 201 and inside the Aspen View Condominiums' common elements area (called "premises" below), 2) Stevie must not urinate or defecate on the premises. [Tenant] or appointed dog watcher/walker must be with the dog at all the times. This person must clean up the mess at every event[,] 3) Stevie must not be a nuisance: barking and making noise, behaving in a threatening manner, or causing a nuisance that would not be acceptable for a human to make." *Id.* "Failure to meet the conditions would result in an automatic fine starting from the date of receipt of the notice. The fine would be $50 per day to Arnal, as owner of the unit." *Id.* (emphasis in original).

The Board sent a follow up letter on January 28, 2014, informing Arnal that it had not yet received the requested documents, and reiterated that documentation was needed to approve MacArthur's service dog request. (ECF No. 70–16). The letter stated that "failure to submit the required information mentioned above will automatically trigger a $50/day fine on the 5th of February as prescribed in our general rules statement... Failure to comply will require us to evict the dog after the 12th of February." *Id.* On January 30, 2014, Arnal emailed the Board to express concerns about the validity of some of the Board's requests. (ECF No. 70–17).

In the email, Arnal stated that MacArthur asked that the Board contact Rosie Girardot, the Client & Community Relations Manager at Canine Support Teams, to help answer questions and get the necessary documentation. *Id.* "Canine Support Teams is the organization that certified Stevie as a service dog and they can provide [the Board] with a copy of Stevie's certification as well as proof that [MacArthur] needs Stevie because of her condition." *Id.* The email concluded with concerns regarding the enforceability of the conditions imposed by the Board. *Id.*

The Board responded, stating that "[t]he board has unanimously agreed that this is not an acceptable response (see below)." *Id.* The Board President then instructed the Board to "[p]roceed with the fines to Mr. Arnal and attendant eviction of the dog as agreed upon and presented previously, if the appropriate response is not received in a timely manner." *Id.* The Board attached HUD Notice: FHEO–2013–01, titled "Subject: Service Animals and Assistance Animals for People with Disabilities in Housing and HUD–Funded Programs," to the email to Arnal." (ECF No. 70–18).

On January 31, 2014, Arnal emailed the Board to communicate that MacArthur was unable to visit the doctor by February

5, 2014, but she agreed to have Canine Support Services release her medical records directly to the Board. (ECF No. 70–19). Arnal inquired whether providing MacArthur's medical records in lieu of a doctor's note, along with a copy of Stevie's certification card would be enough to satisfy the Board's requirements to allow Stevie to reside at Aspen View. *Id.* Internal emails between Board members indicate that "[i]f the information sent to us establishes the need for [MacArthur] to have Stevie even when she does not need the dog for large tracks of time (which is our request) then I agree." *Id.*

On February 8, 2014, the Board received an email and attachments from Rosie Girardot, which explained how the service animal helps alleviate MacArthur's disability, along with a copy of Stevie Nick's expired certification card information, and a physician's statement explaining how the assistance dog will contribute to MacArthur's independence. (ECF No. 83–6). The Association's counsel sent a letter to Arnal, dated February 14, 2014, which stated that the Board concluded that the documentation provided was "wholly inadequate" to satisfy the Board's requests, citing, in pertinent part, that no documentation of MacArthur's disability was provided, and that no reliable documentation was supplied to verify MacArthur's disability-related need for her dog. (ECF No. 70–17).

The Board gave Arnal until February 20, 2014, to comply with the requests, and failure to do so would entitle the Association to demand the removal of Stevie Nicks. *Id.* The Board received a letter from Dewayne Niebur, M.D., dated February 18, 2014, which stated that "Patient has a medical concern that requires a service dog. Currently she has Stevie Nicks, a golden retriever." (ECF No. 70–21). The Board rejected Dr. Niebur's February 18, 2014 note, as not sufficiently detailed for the Board's satisfaction. (ECF No. 83–4).

On March 4, 2014, Arnal's counsel advised the Board of MacArthur's intent to vacate the unit by April 1, 2014, "in large part because she is concerned that the continued stress of this situation and the prospect of further contention with the Board and the Association will cause her to suffer from seizures..." (ECF No. 70–25). The Association responded in a letter dated March 7, 2014, which expressed the Board's willingness to allow MacArthur to maintain the presence of her dog in the unit until April 1, 2014. (ECF No. 70–26). The Board, however, explained that the fine structure would remain in place, and that the only way to prevent the fines is to remove the dog from the premises. *Id.* The letter makes clear that the Association would file an action to enforce the Association's covenants on April 2, 2014, should Arnal fail to remove the dog from his unit. *Id.*

Dr. Niebur provided a second letter, dated March 11, 2014, that more explicitly explained that MacArthur "has a well-documented seizure disorder" and verified that she "benefits greatly by the assistance of [her service dog] in that the dog is able to sense an impending seizure, prepare Ms. Macarthur [sic] for the seizure, and potentially alert others of the situation." (ECF No. 70–27). After the Association received Dr. Niebur's second letter, the AVCA's attorney sought confirmation on whether MacArthur was still planning to move out of the unit on April 1, 2014. (ECF No. 83–9). AVCA's counsel expressed that "[t]he Board is pressuring me to take some kind of immediate action." *Id.* The accommodation request was never explicitly approved.

The Association assessed fines in the amount of $1,450.00 against Arnal on the basis that his tenant's service dog "was maintained and kept in Unit 201 without providing reliable documentation of the

tenant's disability and disability-related need for an assistance dog. (ECF No. 83–11). The Board assessed additional costs in the amount of $4,234.00 for attorney fees. *Id.* AVCA placed a lien in the amount of $5,684.00 against Arnal's property. *Id.* In June 2015, AVCA filed counterclaims against Arnal for allegedly breaching its covenants by allegedly allowing MacArthur's service dog to reside on the premises in violation of its "no dogs" policy. (ECF No. 8). Board member emails regarding Defendants' counterclaims state that the counterclaims serve as "leverage in any settlement negotiations." (ECF No. 83–13). As of April 27, 2016, AVCA alleges that Arnal owed $7,002.25, including fees and finance charges, for allowing MacArthur and her service dog to reside in his unit. (ECF No. 83–14).

## III. STANDARD OF REVIEW

■ Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, I may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1190 (10th Cir. 2000). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that might affect the outcome of the dispute under the applicable law. *Ulissey v. Shvartsman,* 61 F.3d 805, 808 (10th Cir. 1995). All inferences must be construed in favor of the party against whom

the motion under consideration is made. *Pirkheim v. First Unum Life Ins. Co.,* 229 F.3d 1008, 1010 (10th Cir. 2000). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.,* 933 F.2d 891, 892 (10th Cir. 1991).

## IV. DISCUSSION

### A. The Failure to Accommodate Claim

■ The first issue I must decide is whether Defendants violated the Fair Housing Act by failing to make a reasonable accommodation. The FHA makes it unlawful for housing providers to "discriminate against any person in the terms, conditions, or privileges of rental of a dwelling because of a handicap of any person associated with a disabled person." 42 U.S.C. § 3604(f)(2)(C). Prohibited discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To state a claim of discrimination under the FHA for failure to accommodate, a plaintiff must show: (1) that the plaintiff or his associate is handicapped as defined by the FHA; (2) that the defendant knew or reasonably should have known of the claimed handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendants refused to make such accommodation. *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua,* 453 F.3d 1175, 1179 (9th Cir.2006).

Case law interpreting the FHA and reasonable accommodation requests for assistance animals in this circuit is limited.

However, case law in other jurisdictions, as cited by the parties in this case, offers more insight into the interpretation of the FHA. I will consider each element in turn.

### 1. Whether MacArthur is handicapped as defined under the FHA.

■ First, Plaintiff must prove that his tenant, Natasha MacArthur, is handicapped within the meaning of the FHA. 42 U.S.C. § 3604(f)(3)(B); *see Dubois*, 453 F.3d at 1179. To fall within the definition of "handicap," a person must: (1) have a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) have a record of having such an impairment; or (3) be regarded as having such an impairment. 42 U.S.C. § 3602(h).

Defendants seem to contend that MacArthur does not meet the definition of disability under the Act merely because "there was no evidence presented which demonstrated an effect on a major life activity which substantially limits the major life activity," and because her "active work and life style and extensive time without the presence of a dog is substantially unaffected by her claimed disability." (ECF No. 70, p. 11). Plaintiff, however, produced a doctor's note detailing that MacArthur has been diagnosed with epilepsy, a "well-documented seizure disorder." (ECF No. 70–27). The regulations interpreting the Act specify that the term physical or mental impairment includes, among other things, epilepsy. 24 C.F.R. § 100.201(a)(2). Plaintiff has presented evidence sufficient to raise a genuine issue of material fact as to whether MacArthur was disabled as defined by the Act. Thus, I deny summary judgment on the first prong.

### 2. Whether Defendants knew or should have known of MacArthur's disability.

■ The second element requires the plaintiff to show that Defendants knew or should have known of the claimed handicap. 42 U.S.C. § 3604(f)(3)(B); *see Dubois*, 453 F.3d at 1179. A Notice issued by the Department of Housing and Urban Development ("HUD"), the agency charged with administering the FHA, provides further guidance on the accommodation requirement. *See* HUD Office of Fair Housing & Equal Opportunity, FHEO Notice FHEO–2013–01 ("Notice FHEO–2013–01"). I grant HUD's Notice considerable and substantial deference. *See Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F.3d 739, 747 (9th Cir.1996) ("[HUD's] interpretation of the FHA 'ordinarily commands considerable deference' because 'HUD [is] the federal agency primarily assigned to implement and administer Title VIII.' "). In considering a request for a reasonable accommodation under the FHA, "[a] housing provider[ ] may ask individuals who have disabilities that are not readily apparent or known to the provider to submit reliable documentation of a disability and their disability-related need for the assistance animal." Notice FHEO–2013–01, at 3. *Information that the animal provides emotional support that alleviates one or more of the identified symptoms or effects of an existing disability may be sought from a physician, psychiatrist, social worker, or other mental health provisional. Id.* at 3–4. "Such documentation is sufficient if it establishes that an individual has a disability and that the animal in question will provide some type of disability-related assistance or emotional support." *Id.* at 4.

Defendants claim that the Association had no knowledge of MacArthur's disability. (ECF No. 70). Plaintiff raises the following facts to dispute Defendants' contention. First, Plaintiff emailed Defendants that he intended to lease his unit to a person who had a service animal. (ECF No. 70–5). Plaintiff subsequently sent seven additional emails to Defendants to follow up on his initial contact. (ECF No. 70–

31). Defendants do not dispute that they received Plaintiff's emails. Second, Defendants admit that two of its Board members met with Plaintiff and MacArthur on January 8, 2014, for 45 minutes to discuss MacArthur's disability and disability-related need for a service dog. (ECF No. 83–4). During the meeting, MacArthur disclosed to the Board members that she had seizures and that "the dog could sense a seizure coming and give her a warning." (ECF No. 83–5). Moreover, the Board acknowledged MacArthur's need for an "epilepsy alert dog" in internal emails between Board members. (ECF No. 70–13).

Defendants further admit that they received the following documentation between December 24, 2013 and March 13, 2014: (1) MacArthur's service animal certification card; (2) written responses to AVCA's questionnaire entitled *Information Required for Accommodation Requests Relating to Service Dogs*; (3) a letter from Rosie Giradot, at Canine Support Teams; (4) a signed Physician's Statement provided by Canine Support Teams; and (5) two doctor's letters from Dr. Niebur. (ECF No. 83–4). I find that the evidence, taken together, could lead a reasonable jury to conclude that MacArthur had a disability and Defendants' knowledge of the same.

### 3. Whether the service dog may be necessary to the enjoyed use of the Unit.

The third element Plaintiff must prove is that the requested accommodation is necessary to afford MacArthur an equal opportunity to use and enjoy living in Plaintiff's unit. 42 U.S.C. § 3604(f)(3)(B); *see Dubois*, at 1179,. In other words, Plaintiff must demonstrate that preventing MacArthur from housing Stevie Nicks in the unit caused the denial of Plaintiff's right to equal use and enjoyment of the unit. An accommodation is necessary when there is evidence showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability. *Castellano v. Access Premier Realty, Inc.*, 181 F.Supp.3d 798, 806 (E.D. Cal. 2016) (citations omitted). In certain circumstances, service animals may be necessary accommodations. *See Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995). The HUD Notice states that where a disabled person has a "disability related need for an assistance animal" and "the animal ... provide[s] emotional support that alleviates one or more of the identified symptoms or effects of a person's existing disability" then the FHA requires the housing provider to provide an exception to a "no-pets" policy. Notice FHEO–2013–01 at 3.

As I noted above, Plaintiff has submitted evidence that MacArthur suffers from epilepsy. Not only did MacArthur verbally explain to the Board that Stevie Nicks "could sense a seizure coming and give her a warning," but Plaintiff also provided two notes from Dr. Niebur verifying that MacArthur "has a medical concern that requires a service dog," and more explicitly that MacArthur "benefits greatly by the assistance of Stevie [Nicks] in that the dog is able to sense an impending seizure, prepare Ms. Macarthur [sic] for the seizure, and potentially alert others of the situation." (ECF No. 70–27). Additionally, Plaintiff submitted evidence of Stevie Nicks' service dog certification, although the copy provided displayed an expired certification card. Plaintiff has pointed to evidence in the record to support the necessity of the service dog. Thus, summary judgment on this prong is denied.

### 4. Whether the accommodation is reasonable.

An accommodation is reasonable under the FHA when it imposes no fundamental alteration in the nature of the program or undue financial or administra-

tive burdens. *Giebeler v. M & B Associates*, 343 F.3d 1143, 1157 (9th Cir.2003). In most circumstances, waiving a no-pet rule to allow a disabled resident the assistance of a service animal is a reasonable accommodation. *See Bronk*, 54 F.3d at 429. The HUD Notice provides that a request may "be denied if (1) the specific assistance animal in question poses a direct threat to the health or safety of others that cannot be reduced or eliminated by another reasonable accommodation, or (2) the specific assistance animal in question would cause substantial physical damage to the property of others that cannot be reduced or eliminated by another reasonable accommodation." Notice FHEO–2013–01 at 3 (emphasis in original). Any determination that an emotional support animal poses a threat of harm to others or would damage the property of others must be based on an individualized assessment of the specific animal's actual conduct. *Id.* The assessment may not be speculative and may not be based on evidence of harm that other animals have caused. *Id.*

Defendants have since implemented a policy to accommodate service animals. Defendants have not produced any evidence to show that permitting MacArthur's service dog to live in Plaintiff's unit is unreasonable in this case. Board member emails describe Stevie Nicks as "very sweet and well behaved," and "[v]ery affectionate." (ECF No. 70–13). Defendants have not pointed to any evidence to suggest that Stevie Nicks poses a direct threat of harm to others or would cause substantial physical damage to the property of others. Thus, I find that a reasonable jury could conclude that the accommodation is reasonable. As such, summary judgment on this prong is denied.

### 5. Whether Defendants refused the accommodation request.

■■■ The final element Plaintiff must prove is that the defendant refused to make the requested accommodation. 42 U.S.C. § 3604(f)(3)(B). The duty to make a reasonable accommodation does not simply arise from the fact that the handicapped person wants such an accommodation made. *Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua*, 304 F.Supp.2d 1245, 1258 (D. Haw. 2003), aff'd *sub nom. Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir. 2006). Defendants must instead have been given an opportunity to make a final decision with respect to Plaintiff's request, which necessarily includes the ability to conduct a meaningful review of the requested accommodation to determine if such an accommodation is required by law. *Id.* (citations omitted).

■■■ Once allowed that opportunity, a violation occurs when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings. *Groome Res. Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000). Until an accommodation request is denied, there is no discrimination under the FHA. *See* 42 U.S.C. § 3604(f)(3)(B). Unless there is or is about to be an occurrence of discrimination, there is no cause of action. *See* 42 U.S.C. § 3613(c)(1). The denial can be either actual or constructive, "as an indeterminate delay has the same effect as an outright denial." *Groome Resources*, 234 F.3d at 199.

■■■ After Plaintiff sent his initial request to the Board, the Board sought additional information to substantiate both MacArthur's disability and disability-related need for the service dog. "In order to show that the disabled person needs the assistance of a service animal . . . it is reasonable to require the opinion of a physician who is knowledgeable about the subject disability and the manner in which a service dog can ameliorate the effects of

the disability." *In re Kenna Homes Co–op. Corp.*, 210 W.Va. 380, 557 S.E.2d 787, 799 (2001). Additionally, landlords are not precluded from inquiring into and verifying the asserted handicap or the necessity of the accommodation sought. *Id.* Uncertainty as to the disability is not grounds for denying a reasonable accommodation request for an assistance animal. Notice FHEO–2013–01 at 3. If a disability is not immediately clear, housing providers are permitted to ask for supporting documentation from a "physician, psychiatrist, social worker, or other mental health professional" indicating that the animal provides emotional support that alleviates identifiable symptoms. *Id.* at 3–4. "Such documentation is sufficient if it establishes that an individual has a disability and that the animal in question will provide the type of disability-related assistance or emotional support." *Id.* at 4.

Plaintiff submitted notes from Dr. Niebur, documents from Canine Support Teams, and has submitted an expert report to corroborate Dr. Niebur's opinion, explaining the reduction in anxiety and stress the service dog has on MacArthur's disability. Defendants assert that they have yet to make a final determination as to MacArthur's accommodation request and merely seek additional information for verification.

While Defendants were purportedly seeking additional information, the Association (1) concluded, on February 14, 2014, that the then provided documents were not reliable and thus "wholly inadequate to demonstrate to the Board compliance with the Association's Policy," (ECF No. 70–17); (2) authorized the imposition of fines against Plaintiff until the dog was removed from the unit; (3) rejected Dr. Niebur's first note as insufficient; and (4) warned Plaintiff's attorney that Defendants would file an action to enforce the Association's covenants on April 2, 2014, if the dog was

not removed from his unit. Plaintiff asserts that Defendants' actions resulted in MacArthur feeling the need to terminate her lease with Plaintiff eight months before it was set to expire, in fear that the stress caused by Defendants would trigger her seizure disorder. After the Association received notice of MacArthur's intent to vacate, the Board stated it would allow the dog to stay on the premises, but informed Plaintiff that the fine structure would remain in place. The only way for Plaintiff to avoid the fines was to remove the dog from the premises. Defendants never approved the accommodation request, even after the Board received Dr. Niebur's more detailed second letter.

Plaintiff has raised a genuine issue of material fact as to whether Defendants refused the accommodation request. To me, it is unclear what further information Defendants needed to verify MacArthur's disability or disability-related need for her service dog. I find that a reasonable jury could conclude that Defendants' continued efforts to seek additional information, and its continued delay in granting the accommodation, constitutes an actual or constructive denial. Thus, summary judgment on this prong is denied.

### B. The Retaliation Claim

▉▉▉▉ The FHA makes it unlawful "to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. To state a claim of retaliation under the FHA, the plaintiff must show that (1) he was engaged in protected activity; (2) he suffered an adverse action in the form of coercion, intimidation, threats, or

interference; and (3) there was a causal link between the two. *Dubois*, 453 F.3d at 1180. A violation of Section 3617 may be shown even absent other violations of the FHA. *Zhu v. Countrywide Realty, Co.*, 165 F.Supp.2d 1181, 1196 (D. Kan. 2001) *cf. Stackhouse v. DeSitter*, 620 F.Supp. 208, 210 (N.D.Ill.1985) (requiring violation of other sections of FHA to state claim under Section 3617 would render Section 3617 superfluous).

Defendants argue that Plaintiff does not allege any specific acts of retaliation. (ECF No. 70). Defendants also argue that it did not take any action to require removal of the dog or impose fines until MacArthur had moved out. *Id.* Defendants further contend that the Association did not take any action that was motivated by Plaintiff's FHA complaint, or by "any acts by either MacArthur or Arnal other than their failure to provide the legally required documentation." *Id.* Defendants finally assert that no discrimination occurred because "[a]ll future tense requests for removal were based only on if MacArthur chose not to provide the documentation that the Association was legally entitled to request." *Id.*

██ I am not so persuaded, however. As to the first element, Plaintiff provides that his protected activity includes (1) his right to rent his unit to a person with a disability; (2) his right to request an accommodation on her behalf; (3) his right to protest against what he maintains were discriminatory housing practices; and (4) his right to aid his tenant in the exercise of her own fair housing rights. (ECF No. 83, p. 30). Thus, Plaintiff has raised a genuine issue of material fact as to whether he engaged in protected activity under the FHA.

██ As to the second element, Plaintiff contends that the AVCA Board unanimously adopted a resolution imposing fines and fees against him. (ECF No. 83–11).

Plaintiff argues that the resolution is the causal link between his protected activity and the adverse actions taken against him by Defendants. Defendants imposed fines in the amount of $1,450.00 against Plaintiff on the basis that his tenant's service dog "was maintained and kept in Unit 201 without providing reliable documentation of the tenant's disability and disability related need for an assistance dog." *Id.* Defendants also placed a lien on Plaintiff's property in the amount of $5,684.00. Plaintiff posits that Defendants' retaliatory intent is evidenced by Board member emails regarding Defendants' counterclaims, stating that the counterclaims serve as "leverage in any settlement negotiations." (ECF No. 83–13). Additionally, Plaintiff has produced evidence that the Board permitted MacArthur to keep the service dog in Unit 201, but retaliated against him by imposing a $20.00 per day fine, for every day the dog was maintained on the premises.

I find that a reasonable jury could conclude that the imposition of these fines constitute coercion, intimidation, threats or interference because Plaintiff leased his unit to a tenant with a service animal, in addition to seeking an accommodation to Defendants' no-dog policy. As such, I deny Defendants' motion for summary judgment on Plaintiff's retaliation claim under the FHA.

## C. The State Law Claim and Attorney's Fees

Magistrate Judge Wantanabe granted Plaintiff's Motion for Leave to Amend Complaint (ECF No. 76), on May 17, 2016, which removed the state law claim from the case. As such, Defendants' motion for summary judgment on the state claim of tortious interference with contract is denied as moot.

Further, because Plaintiff has made a prima facie case for discrimination under

the FHA, Defendants' motion for summary judgment on attorney fees is denied.

## V. CONCLUSION

For the reasons discussed herein, it is ORDERED that Defendants' Motion for Summary Judgment (ECF No. 70) is **DENIED**.