618 S.E.2d 463

WEST VIRGINIA HUMAN RIGHTS COMMISSION, on Its Own Behalf and on Behalf of Scott and Mary Ellen Black, for Their Daughter, Rebecca A. Black, A Minor Child, and Scott Black and Mary Ellen Black, Individually, and on Behalf of Rebecca A. Black, Their Minor Child, Plaintiffs Below, Appellants,

v.

THE ESQUIRE GROUP, INC., A West Virginia Corporation, Defendant Below, Appellee.

No. 32165.

Supreme Court of Appeals of West Virginia.

Submitted: May 10, 2005.

Filed: June 30, 2005.

Darrell V. McGraw, Jr., Attorney General, Paul R. Sheridan, Senior Assistant Attorney General, Charleston, for the Appellant, West Virginia Human Rights Commission.

Paul E. Biser, Fredeking & Fredeking Law Offices, LC, Huntington, for the Appellants, Scott Black and Mary Ellen Black.

Brian S. Lindsay, Barry M. Taylor, Jenkins Fenstermaker, PLLC, Huntington, for the Appellee, The Esquire Group, Inc.

The Opinion of the Court was delivered PER CURIAM.

Justice DAVIS dissents and reserves the right to file a dissenting opinion.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

PER CURIAM.

By way of this appeal, Scott and Mary Ellen Black (hereinafter referred to collectively as "Appellants") challenge the orders of the Circuit Court of Cabell County by which the discriminatory housing practices complaint filed by the West Virginia Human Rights Commission (hereinafter referred to as "HRC") against The Esquire Group, Inc. (hereinafter referred to as "Esquire") [1] was dismissed. Appellants intervened in the HRC civil action,[2] in which HRC charged Esquire with violation of West Virginia Code § 5–11A–5(f)(3) (1992) (Repl.Vol.2002), for insisting on strict adherence to the provisions of restrictive covenants affecting the housing subdivision lots owned by Appellants and Esquire, and thereby failing to make reasonable accommodation for the disability needs of Appellants' daughter, Rebecca A. Black. Appellants essentially contend that the lower court, in granting summary judgment for Esquire, erred by finding that the housing discrimination claim was barred by principles of res judicata or in the related finding that

1. Esquire is the owner of several lots in the country club development and is not a homeowners' association.

2. Appellants were granted intervenor status in the HRC suit both as individuals and as the natural parents and next friends of their daughter, Rebecca A. Black.

the discrimination claim was a compulsory counterclaim which should have been raised in the prior restrictive covenant proceeding. Appellants additionally argue that the court below erred by finding that the accommodation Esquire offered of not immediately enforcing the permanent injunction it had obtained against Appellants to be reasonable. HRC files cross-assignments of error also opposing the circuit court's summary judgment order on the basis of res judicata and contesting the lower court's finding that Esquire provided reasonable accommodation. Having completed our review of the record against the backdrop of the arguments and briefs of the parties and the applicable legal principles, we reverse the final order of the lower court and remand the case for trial.

## I. Factual and Procedural Background

Appellants are home and property owners within a subdivision at the Esquire Country Club located in Barboursville, West Virginia. Esquire filed an action for injunctive relief on November 24, 1999, against Appellants[3] seeking removal of a fence which Esquire maintained violated restrictive covenants in the deeds of all property owners in the subdivision. Although the injunction matter involving the restrictive covenants was a separate case, details of what occurred during the proceeding which culminated in the issuance of a permanent injunction are necessarily relevant to the res judicata ruling subsequently made in the housing discrimination claim before us in this appeal.

As reflected in the permanent injunction order, the restrictive covenants upon which Esquire relied in the initial suit are as follows:

Restrictive Covenant No. 10 . . .

*ARCHITECTURAL CONTROL COMMITTEE APPROVAL.* No construction shall be begun upon any lot until the plans and specifications including the location of the structure on said lot have been approved by the Architectural Control Com-

mittee. No fence, hedge or wall shall be erected, planted, placed or altered upon any lot without the approval of said Architectural Control Committee.

Restrictive Covenant No. 14 . . .

*FENCES AND SHRUBS.* No fence of any kind shall be allowed on any lot without approval of the Architectural Control Committee, and no fence shall be constructed forward of the rear building line of the house, except ornamental fences not exceeding twenty-four (24) inches in height. . .

The record reflects that Appellants were made aware of these provisions in their deed and approached the Architectural Control Committee (hereinafter referred to as "ACC")[4] sometime in July 1999 to obtain approval for constructing an in-ground swimming pool with a privacy fence. ACC communicated its decision by letter dated August 3, 1999, in which it said:

The in-ground pool, as submitted, has been approved and construction may begin at your discretion. However, the five-foot white vinyl fence which you propose does not comply with the covenants, which you previously agreed upon at the time you purchased your property. We respectfully request any fence surrounding the pool be of a height no greater than 24″ as specified in the deed covenants.

When Esquire learned that Appellants had erected a fence in excess of twenty-four inches, it filed a petition for a preliminary injunction in November 1999 to halt what they claimed to be a violation of the restrictive covenants. A hearing was held on November 29, 1999, regarding the preliminary injunction. Mr. Black testified at the hearing, during which he stated the safety and liability reasons why the fence was constructed around the pool; however, he did not indicate that his daughter's medical condition contributed to the explanation of why the

---

3. Appellants were named in the injunction action in their individual capacities only. The daughter was not named in that action nor is there any indication in the record that Appellants were acting in a representative capacity for their daughter during the proceeding for injunctive relief.

4. As revealed by the record in the injunction proceeding and confirmed during oral argument, the ACC is composed of individuals selected solely by Esquire.

fence was needed to minimize contamination of the pool. A temporary injunction was granted at the end of the hearing and Esquire filed for permanent injunctive relief that same day.

In responsive pleadings, Appellants focused their assault on the validity and enforceability of the restrictive covenants and did not mention the daughter's condition or its disabling effects. At a hearing regarding the petition for a permanent injunction held on February 25, 2000, Mr. Black discussed his daughter's illness in relation to the fence and pool in the following way: [5]

[W]e wanted to put in a pool for our daughter. That's the reason for the fence. Our daughter has leukemia and we wanted to—it was one of her wishes to have—have a pool to swim in. And we—I went about finding out, you know, the cost of pools.

I went about to find the cost of pools and we—all we wanted to do was a pool for our daughter. That's all we want to do.

The fence is put up there to protect the kids in the neighborhood, that's all the reason.

At the conclusion of the February 25, 2000, hearing, the presiding judge ruled from the bench, stating that:

A restrictive covenant is just that, a restrictive covenant. They're not looked upon with favor, but they are honored.

. . . . .

I have heard testimony at the prior hearing and today's hearing, which basically comes down to this: That the Blacks were aware of the covenant, regardless of the interpretation. Asked for an exception or permission of the Architectural Control Committee. Were denied that permission and in essence said, Let's run the risk.

. . . . .

The matter of acquiescence is not really relevant or at least to the Court's interpretation of the law in this state. The Esquire Group, it appears, has been shoddy in its enforcement, lackadaisical and inconsistent. And probably unfair.

The Blacks had an opportunity to appeal the decision, and thinking, according to the testimony of Mrs. Black, that based upon what their decision of the Architectural Control Committee was, that it would be futile to appeal to the Board of Directors, even though they are a different body. They have the option of coming into court to try to get relief, did not choose to do this. But based upon the—their lack of knowledge, at least of any enforcement against other people, went ahead and knowingly went directly against the restrictions.

. . . . .

I'm of the opinion, taking all of what I have stated and what I have heard, the documentary evidence, that the fence is in violation of the restrictive covenants, that the respondents knew it was in violation, proceeded to go ahead anyhow, and now are having a permanent injunction granted against them. And I will make the injunction permanent.

I will give a stay of execution of that so this decision may be appealed. The stay will be effective for 45 days.

An order containing these findings and conclusions was signed and entered on March 24, 2000.

The record shows that a letter was sent to Esquire by Appellants' counsel on March 14,

---

5. There is evidence in the instant HRC case that ACC had been informed of Appellants' daughter's illness by means of a facsimile transmission sent by Appellants' counsel on July 30, 1999, stating in relevant part:

As I am sure you are aware, the Black's [sic] nine year old daughter has recently been diagnosed with Leukemia [sic]. She is now undergoing chemo therapy [sic] treatments for this very serious disease. The only reason that the Black's [sic] now want to install a pool on their property is because of their daughter's love of swimming. Their daughter's doctor has informed them that swimming would be an excellent way for her to exercise during her treatment. Due to her condition, she is unable to swim in any public pools during the two years she will be receiving treatment for this dangerous disease.

The certified record of the restrictive covenant proceeding submitted with this appeal does not reflect that this facsimile was introduced into evidence in that case.

2000, asserting that the fence around Appellants' swimming pool was a medical necessity as attested to by a medical report of Rebecca A. Black's treating physician enclosed with the letter.[6] The letter also went on to convey the request

> that the Esquire Group immediately grant a variance for the Black's [sic] fence and swimming pool. The Black's [sic] are requesting that the variance be granted by Friday, March 17, 2000. Failure to do so will result in charges being filed for a violation of the Fair Housing Act of 1988, for failing to make reasonable accommodations and other potential violations. Esquire's counsel responded to this demand by letter dated March 16, 2000,

in the following way:

> I also reviewed at noon today your telecopy with its demand for a variance based upon a March 14, 2000[,] letter from Andrew L. Pendleton, M.D. and your threat of charges being filed for violations of the Fair Housing Act of 1988. You acknowledged that this was the very first time these issues had been raised and differed from all prior information (back to July 1999) that construction on the Black property related solely to the child's request for a pool and her private recreation and enjoyment during her illness. Esquire is not aware that it violated any law, and denies doing so.

On March 19, 2000, Appellants filed an administrative complaint alleging discrimination and violation of their daughter's fair housing rights, which triggered an HRC investigation. At the same time, while HRC sought but did not attain intervenor status in the restrictive covenant case, the permanent injunction therein granted was stayed during the pendency of the HRC investigation. After the investigation was completed, HRC found reasonable cause to believe that the

Fair Housing Act had been violated and issued "a charge on behalf of the aggrieved person." W. Va.Code § 5–11A–11(f)(2)(A) (1992) (Repl.Vol.2002). On April 9, 2001, HRC filed the housing discrimination case in the circuit court at the request of Esquire as permitted by West Virginia Code § 5–11A–13(a) (1992) (Repl.Vol.2002). Rebecca Black, by and through her parents, sought and obtained intervenor status in the HRC case.

Esquire moved for summary judgment on September 17, 2002, claiming that res judicata principles dictated dismissal of the housing discrimination case. On May 22, 2003, a hearing was held on the motion and summary judgment was granted to Esquire. While the lower court announced its ruling at the conclusion of the May 22, 2003, hearing, the order detailing the grounds for dismissing the discrimination case was not entered until September 10, 2003. In granting Esquire's motion for summary judgement, the court below determined that the handicap discrimination claim was barred as res judicata and found that the discrimination action was a compulsory counterclaim which should have been brought at the time of the restrictive covenant suit. At the same time, the court below found that Esquire's actions evidenced reasonable accommodation of the medical needs of Appellants' daughter. Appellants timely moved to alter or amend the judgment pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure, which motion was denied. Thereafter this appeal was filed by Appellants, in which HRC filed cross-assignment of errors.

## II. Standard of Review

 This case is before us from an order of summary judgment. It is well-settled that "[a] circuit court's entry of summary judgment is reviewed *de novo*" by this Court. Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In exer-

---

**6.** The attendant letter from the treating physician was dated March 14, 2000, and stated, in part: Rebecca "Annie" Black is a 10–year–old patient of mine who has leukemia. She was diagnosed in April of last year and is undergoing treatment for this potentially life-threatening disease. Swimming is an excellent form of exercise for this young lady but not possible to occur in public facilities due to her underlying

compromised immune system. The Blacks' fence is necessary to prevent contamination of the pool's water from the waste products of the neighborhood animals and to avoid a tragic outcome if unsupervised children wandered into the pool....

In my professional opinion, the swimming pool fence is a medical necessity.

cising our de novo review, we remain ever cognizant that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N. Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

## III. Discussion

■ The core issue of this appeal is whether the lower court was correct in concluding that res judicata principles preclude the housing discrimination claim from going forward. We observed in *Conley v. Spillers*, 171 W.Va. 584, 588, 301 S.E.2d 216, 219 (1983), that "[t]he underlying purpose of the doctrine of *res judicata* was initially to prevent a person from being 'twice vexed for one and the same cause.' *State ex rel. Connellsville By–Product Coal Company v. Continental Coal Company*, 117 W.Va. 447, 449, 186 S.E. 119, 120 (1936)." We then recognized the following additional public policy reasons underlying the doctrine of res judicata as expressed in *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210, 217 (1979):

> "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."

*Conley*, 171 W.Va. at 588, 301 S.E.2d at 219–20. Later, in *Blake v. Charleston Area Medical Center, Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997), we established the following three-part test for determining whether res judicata serves to preclude a claim.

Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of

action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

*Id.* at Syl. Pt. 4. No one challenges that the first condition was met in the instant case; however, the existence of the second element is contested by both Appellants and HRC. Additionally, HRC argues that the cause of action in the restrictive covenant suit and the cause of action in the housing discrimination suit are dissimilar, making a res judicata determination unsuitable under the third element of the test announced in *Blake*.

### A. Same Parties or Persons in Privity

It is undisputed that neither Appellant's daughter nor HRC were named as a party in the restrictive covenant suit brought by Esquire; however, both Appellants and. HRC contend that the lower court erred by finding that the daughter and HRC were in privity with parties in the first suit.

■ This Court defined the word "privity" in the syllabus of *Cater v. Taylor*, 120 W.Va. 93, 196 S.E. 558 (1938), by saying: "Privity, in a legal sense, ordinarily denotes 'mutual or successive relationship to the same rights of property.' *[Edward F.] Gerber [Co.] v. Thompson*, 84 W.Va. 721, 727, 100 S.E. 733, [735,] 7 A.L.R. 730[, 734 (1919) ]." On a later occasion in *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), we explained that the concept of privity with regard to the issue of claim preclusion is difficult to define precisely but the key consideration for its existence is the sharing of the same legal right by parties allegedly in privity, so as to ensure that the interests of the party against whom preclusion is asserted have been adequately represented. *Id.* at 13, 459 S.E.2d at 124. Put another way, " '[p]reclusion is fair so long as the relationship between the nonparty and a party was such that the nonparty had the same practical opportunity to control the course of the proceedings that would be available to a party.' " *Gribben v. Kirk*, 195 W.Va. 488, 498 n. 21, 466 S.E.2d 147, 157 n. 21 (1995) (quoting 18 Charles A. Wright, Arthur R. Miller &

Edward H. Cooper, *Federal Practice and Procedure* § 4466 at 430 (1981)).

With regard to privity between parents and children, we have adopted the view that privity does not automatically arise from the parent-child relationship. *Glover v. Narick,* 184 W.Va. 381, 389, 400 S.E.2d 816, 824 (1990). Thus, the analysis used to determine the existence of privity as described in the preceding paragraph is applicable to situations where a parent and child relationship is at issue. Applying that analysis to the matter before us, we find that even though there are overlapping facts between the prior proceeding and the unfair housing claim, the interests of Appellants and their daughter are decidedly different. Acting in their capacity as individuals, Appellants' defense in the case involving enforcement of the restrictive covenants rested solely on safety and liability reasons why a fence was needed to protect their property rights despite the restrictive covenants. The daughter's interest rests on the statutory right for individuals with handicaps to receive fair housing treatment through reasonable accommodation. *See* W.Va.Code Chapter 5, Article 11A, West Virginia Fair Housing Act (hereinafter referred to as "Act"). There was no shared legal right in this instance because Appellants, who themselves allege no handicap, only could have asserted an unfair housing claim in the prior proceeding if they were acting in a representative capacity for their child, which they clearly were not. Under these circumstances, no privity between the child and parents exists.[7]

The lower court also found HRC in privity with Appellants in the prior proceed-ing. The lower court's reasoning to this end is not entirely clear. On the one hand the court below stated in its September 8, 2003, summary judgment order that HRC's argument of advancing the goal of vindicating the public's interest in eradicating discrimination within the state was not convincing because "[t]his matter concerns a party-specific issue with regard to the Esquire's refusal to [give] the Blacks a permanent exemption to the restrictive covenants." Thereafter, the order relates:

> In addition, it appears from the pleadings submitted that the WVHRC made an attempt to intervene in the initial action but their motion was held in abeyance pending further briefing. Therefore, even though the WVHRC never achieved full party status in the underlying action, it was connected with and attempting to act on behalf of the Blacks even during the initial action. The Court concludes that the Blacks and the WVHRC are in privity with one another . . . .

The lower court's reasoning is flawed on both counts and in either instance the conclusion is based on the determination that privity existed among Scott, Mary Ellen *and* Rebecca Black. As we have found that the daughter was not in privity with the parents in this case, and we see no other basis on which privity between Appellants and HRC existed, we find the lower court's ruling in error. Moreover, the Legislature has delegated the responsibility to HRC to act on behalf of the public interest and not merely serve as a proxy for a housing discrimination complainant. W.Va.Code § 5–11A–11(f)(2)(A); W.Va. Code §§ 5–11A–13(c) and (o)(2).[8] Thus,

---

7. Finding that the daughter was not a party or in privity with a party in the prior case also discounts the lower court's ruling also assigned as error by Appellants that the unfair housing claim was a compulsory counterclaim which was required to be raised in the restrictive covenant proceeding. By its terms, the rule governing compulsory counterclaims applies only to parties as evidenced from the following language:

> (a) *Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim

and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

W.Va. R.C.P. 13. As previously noted, in their individual capacity, Appellants were not in the position to raise a housing discrimination claim against Esquire in the restrictive covenant proceeding.

8. West Virginia Code § 5–11A–11(f) reads as follows:

> (2)(A) If the [human rights] commission determines that reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, the commission

HRC's authority to bring a fair housing discrimination suit is not merely derivative as the lower court's ruling implies. *Cf. EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (applying federal antidiscrimination laws containing analogous authority in the context of employment discrimination to find that the EEOC is not a proxy for a complainant as "[t]he [enabling] statute clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake.").

B. Similarity of Cause of Action between Sequential Suits

 The third factor which must be present to support a res judicata determination is a finding that "the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action." *Blake*, 201 W.Va. at 472, 498 S.E.2d at 44, at Syl. Pt. 4. As an extension of its assertion that it was neither a party or in privity with a party in the restrictive covenant proceeding, HRC also asserts as a counter assignment of error that this third factor was not satisfied. HRC specifically claims that the private right of action provided to individuals under the Act is not the same cause of action HRC is statutorily authorized to pursue when the agency issues a housing discrimination charge to further the public's interest. We agree, mindful of the fact that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No.* 548, *V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

A private cause of action for housing discrimination is governed by West Virginia Code § 5–11A–14 and must be filed in circuit court. The relief an individual may seek is also prescribed by statute. *Id.* Charges brought by HRC following an investigation are brought pursuant to West Virginia Code § 5–11A–11(f)(2), which directs the attorney general to litigate either administratively or in the courts. W.Va.Code §§ 5–11A–13(c) and –15(b). In addition to the individual relief available in these actions, HRC is empowered to seek civil penalties in order to "vindicate the public interest" in either forum. W.Va.Code §§ 5–11A–13(g)(3) and –15(d)(1)(C). If Appellants, acting in a representative capacity for their daughter, had brought fair housing counterclaims in the restrictive covenant case, they would not be able to pursue imposition of civil penalties. The claims for relief and types of relief sought by HRC were simply not reachable or available in the restrictive covenant proceeding given the facts of this case.

Based on the foregoing, we reverse the summary judgment order dismissing as res judicata the housing discrimination claim brought by HRC and in which Appellants intervened as representatives of their daughter's interests.

The remaining challenge to the lower court's summary judgment order raised by both Appellants and HRC involves that court's treatment of the issue of reasonable accommodation. After dismissing the housing discrimination claim as res judicata, the court below proceeded to discuss the proof which Esquire had evidently presented regarding its offer to accommodate the daughter's disability. Based upon Esquire's evi-

---

shall, except as provided in subparagraph (C), immediately issue a charge on behalf of the aggrieved person, for further proceedings under section thirteen of this article.

The referenced subdivisions West Virginia Code § 5–11A–13 further provide:

(c) At a hearing under this section, each party may appear in person, be represented by counsel, present evidence, cross-examine witnesses and obtain the issuance of subpoenas under section twelve [§ 5–11A–12] of this article. Any aggrieved person *may intervene* as a party in the proceeding. The rules of evidence apply to the presentation of evidence in such hearing as they would in a civil action in the circuit courts of this state. The case in support of the complaint shall be presented before the administrative law judge by the attorney general.

(o)(2) Any aggrieved person with respect to the issues to be determined in a civil action under this subsection *may intervene* as of right in that civil action.

(Emphasis added.)

dence, the lower court found "that Esquire has offered plaintiffs' [sic] a reasonable accommodation as a matter of law." The court below seemingly granted summary judgment on this issue by determining that there was no evidence upon which a jury could legitimately decide that Esquire's offer to temporarily allow the fence variance was less than reasonable or that Esquire owed Appellant's daughter a greater degree of accommodation in order to meet the standard of reasonableness. Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963) (A motion for summary judgment should be granted by a circuit court "only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.")

 Albeit for differing reasons, Appellants and HRC assert error with the lower court's interpretation of the law regarding reasonable accommodation. Our problem with the ruling is far more fundamental. In granting summary judgment on the basis of res judicata, the lower court disposed of the housing discrimination claim in its entirety. Once the claim was determined as res judicata, no part of that claim remained before the court for further discussion or determination.[9] At best this portion of the lower court's order takes on the character of an advisory opinion and such obiter dicta is not becoming a court. "[C]ourts [will not] resolve mere academic disputes or moot questions or render mere advisory opinions which are unrelated to actual controversies. *Mainella v. Board of Trustees*, 126 W.Va. 183, 27 S.E.2d 486. 26 C.J.S., Declaratory Judgments, Section 30, page 107." *Farley v. Graney*, 146 W.Va. 22, 30, 119 S.E.2d 833, 838 (1960). Thus, we decline the invitation to

review the reasonable accommodation issues raised by Appellant and HRC as they are prematurely advanced. Such accommodation issues would not be ripe for appellate review until after they have been litigated below and this housing discrimination claim is finally decided.

## IV. Conclusion

Having found that the lower court erred in reaching its conclusion that the housing discrimination claim was res judicata by virtue of the prior restrictive covenant determination, we reverse the September 8, 2003, and April 19, 2004, orders of the Circuit Court of Cabell County and remand the case for further proceedings.

Reversed and remanded.

DAVIS, J., dissenting.

In this proceeding, the majority opinion has concluded that res judicata did not apply in this case, and, therefore, the circuit court erred by granting the defendant summary judgment on that ground. The flaw in the majority opinion is that it disregarded the circuit court's alternative basis for granting summary judgment. The majority opinion did so by stating that the circuit court could not give an alternative basis for granting summary judgment. For the reasons set out below, I respectfully dissent.

### 1. *Circuit Court Judges Have Authority to Render Summary Judgment on Alternative Grounds*

In this proceeding, the circuit court found that summary judgment was appropriate because res judicata applied. Alternatively, the circuit court concluded that summary judgment was appropriate because the defendant

---

**9.** The lower court's frustration with this case is apparent. While we appreciate the desire of the court below to see the matter finally resolved, we reiterate the long-standing principle that summary judgment "is not designed as a short cut of trials on the merits." Lugar & Silverstein, *W.Va. Rules of Civil Procedure* at 428 (1960). As we held in syllabus point three of *Thomas v. Goodwin*, 164 W.Va. 770, 266 S.E.2d 792 (1980), "[o]n a motion for summary judgment the court cannot summarily try factual issues and may consider only facts which are not disputed or the dispute of which raises no substantial factual

issues." During oral argument it was made abundantly clear that a number of substantial issues regarding elements of an unfair housing claim remain in dispute and "inquiry concerning the facts is . . . desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N. Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Consequently, even if the housing discrimination claim had not been dismissed on res judicata grounds, the grant of summary judgment was simply not warranted based upon the evidence.

had provided the plaintiff with an accommodation. The majority opinion concluded that res judicata did not apply. However, rather than examining the accommodation alternative, the majority opinion stated that "[o]nce the claim was determined as res judicata, no part of the claim remained before the court for further discussion or determination."

Prior to the decision in this case, the opinions of this Court were quite clear in observing that summary judgment may be granted on alternative grounds. *See Mrotek v. Coal River Canoe Livery, Ltd.*, 214 W.Va. 490, 491, 590 S.E.2d 683, 684 (2003) ("The circuit court granted summary judgment on two alternative grounds.... Upon review of the briefs and record in this case, we affirm."); *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 148–150, 506 S.E.2d 578, 591–593 (1998) ("In its summary judgment order, the circuit court listed alternative reasons for granting CAMC's summary judgment.... [T]he circuit court's alternative grounds for granting summary judgment on the tortious interference claim was correct."); *Tolliver v. Kroger Co.*, 201 W.Va. 509, 523, 498 S.E.2d 702, 716 (1997) ("We ... affirm the circuit court's alternative ground for granting partial summary judgment on the claim of assault and battery.").

Additionally, federal courts have recognized that summary judgment may be granted on alternative grounds. *See also Exxon Corp. v. Hunt*, 475 U.S. 355, 361, 106 S.Ct. 1103, 1109, 89 L.Ed.2d 364 (1986) ("The Tax Court entered summary judgment for New Jersey on two alternative grounds."); *United States ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.*, 393 F.3d 1321, 1323 (D.C.Cir. 2005) ("The District Court granted summary judgment for Odebrecht, relying on two alternative grounds."); *Church of American Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 202 (2nd Cir.2004) ("The District Court granted plaintiffs' motion for summary judgment ... on four independent and alternative First Amendment grounds."); *Porter v. Ascension Parish School Bd.*, 393 F.3d 608, 613 (5th Cir.2004) ("In the present case,

the district court granted the defendants' motion for summary judgment on grounds that plaintiffs had failed to raise a material fact issue with respect to any of their constitutional claims, and on the alternative ground that defendant Braud was entitled to summary judgment based on qualified immunity."); *Banks v. City of Whitehall*, 344 F.3d 550, 551–552 (6th Cir.2003) ("The district court granted the defendants' motion for summary judgment on several alternative grounds."); *McKay v. United States Dept. of Transp.*, 340 F.3d 695, 698 (8th Cir.2003) ("The district court granted summary judgment for the DOT on two alternative grounds."); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 881 (9th Cir.2002) ("The district court dismissed the[ ] claims on the alternative grounds that it lacked jurisdiction over the ... claims, and that [plaintiff] failed to support them with evidence sufficient to withstand summary judgment.").

The majority opinion now proclaims that summary judgment cannot be based on alternative grounds. Further, the majority opinion held that an alternative ground for summary judgment is mere "obiter dicta." As I will show, the majority opinion improperly reached this conclusion, because the circuit court's alternative ground properly disposed of this case.

### 2. Summary Judgment Was Appropriate under the Alternative Ground

Prior to the decision by the majority, our law was clear in recognizing that "Rule 56(c) gives trial courts the discretion to grant summary judgment when a moving party has shown that no genuine issue of material fact is in dispute and the moving party is entitled to judgment as a matter of law." Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 56(c), at 932–933 (2000). In the instant case the trial court found, as an alternative basis for granting summary judgment,[1] that the defendant had established that no genuine issue of material fact was in dispute and the defendant was entitled to summary judgment. I will illus-

---

1. I disagree with the majority opinion's conclusion that res judicata did not apply in this case. However, I need not address this issue because

the alternative grounds for summary judgment left no room for "honest" differences of opinion.

trate the correctness of this conclusion by citing the findings made by the circuit court in its well reasoned order: [2]

### C. Esquire's Offer of Accommodation

16. Esquire also has presented evidence that it has offered to allow the Blacks to keep the fence so long as it is medically necessary as a reasonable accommodation for Ms. Blacks' medical condition and has met any requirements of the West Virginia Fair Housing Act. In support of its argument, Esquire asserts that it offered a reasonable accommodation in order to assist the Blacks.

17. To establish a prima facie case under the Federal Fair Housing Act ("FFHA") or the West Virginia Fair Housing Act ("WVFHA"), plaintiff is required to show that:

"(1) [plaintiff] suffers from a handicap as defined in 42 U.S.C. § 3602(h); (2) defendants knew of [plaintiff's] handicap or should reasonably be expected to know of it; (3) accommodations of the handicap 'may be necessary' to afford [plaintiff] an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation."

*In re Kenna Homes Coop. Corp.*, 210 W.Va. 380, 557 S.E.2d 787, 794 (2001). The Court noted that both Acts only require an accommodation if a person suffers from a "handicap." *Id.* "Second, only accommodations that are reasonable are required." *Id.* Further, the reasonable accommodation requirement "does not entail an obligation to do everything humanly possible to accommodate a disabled person ..." *Id.*

18. The record has demonstrated that Esquire offered to allow the fence to stay in place as long as it is required as a medical necessity. Esquire has taken no action to enforce Judge Cummings' Permanent Injunction Order and has no plans to do so as long as the fence is a medical necessity.

19. The WVHRC and the Blacks, despite the grant of the reasonable accommodation, pursued the instant action because Esquire will not grant a "permanent exemption" to the restrictive covenant at issue, regardless of handicap or disability and regardless of occupancy of the property. However, a permanent exemption, running with the land, simply is not required or even contemplated under the Fair Housing Act. Rather, a proposed accommodation must be based on "handicap", "reasonableness" and "necessity." *In re Kenna Homes Coop. Corp.*, 557 S.E.2d at 794. W. Va.Code § 5–11A–5(f)(3) dictates that reasonable accommodation only be required while the handicapped person occupies the premises. It follows that if the person no longer uses the dwelling, *i.e.*, resides there, the need for the accommodation has ceased. Moreover, such an accommodation only is required if the individual is handicapped. Plaintiffs have claimed to be entitled to an exemption even if Ms. Black resides in the home but no longer qualifies as handicapped under the statute. However, both FF[H]A and the WVFHA "only require[ ] an accommodation for *persons with handicaps* if the accommodation is (1) *reasonable* and (2) *necessary* (3) to afford handicapped persons equal opportunity to use and enjoy housing." *In re Kenna Homes*, 557 S.E.2d at 794 *citing Bryant Woods Inn v. Howard County, Maryland*, 124 F.3d 597, 603 (4th Cir.1997) (emphasis added). If Ms. Black no longer qualifies as a handicapped person under the statute, the need for the accommodation has ceased to exist and no longer would be necessary.

20. Plaintiffs also argue that Esquire's proposed accommodation is not reasonable due in part to the fact that should Ms. Black's medical condition resolve itself, the subsequent removal of the fence under Esquire's offer of accommodation would not be cost efficient. Nevertheless, the law places the burden for expenses related to reasonable accommodation upon the party requesting it. Even assuming plaintiffs'

---

**2.** Ordinarily I would note quote so extensively from a trial court's order. However, because the majority opinion tossed aside the findings in this case as orbiter dicta, I feel it is important to fully set out the findings.

argument that the Blacks will be faced with significant costs and liabilities should Ms. Black return to health or move from the home is true, the Court finds that this does not change the reasonableness of Esquire's accommodation.

21. The anti-discrimination statute expressly states that unlawful discrimination consists of:

> "a refusal to permit, at the expense of the handicapped person, the reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such full enjoyment of the premises ..."

The statute expressly has stated that the costs associated with reasonable modifications must be borne by the handicapped person. The Blacks undertook their unilateral decision to construct the pool and the fence, and in doing so, assumed the responsibility for *all* costs associated with, the making of such modifications—site preparation, installation, maintenance, and even possible removal. Plaintiffs seek to differentiate between costs of installation and costs of removal. No such distinction has been set forth in the statute.

22. Moreover, the expenses of modification must include the costs associated with removing an accommodation once it becomes unnecessary. To hold otherwise would allow the Blacks to enjoy a right to which none of their resident neighbors enjoy, even though no disabled individual resides in the house.

23. If Ms. Blacks' disability continues, Esquire has offered to allow the allegedly needed fence to remain. In such case, the Blacks will not be faced with the potential costs as long as Ms. Black lives in the home.

24. Moreover, this Court cannot ignore that if Ms. Black is not disabled, she is not entitled to the protections of the WVFHA. If Ms. Black is not disabled, the Blacks are landowners on equal footing with every other landowner in the subdivision. The Blacks cannot shift to Esquire, and the other landowners, the costs associated with bringing their property into compliance with a judicially sanctioned restrictive covenant in the event that a disabled person no longer resides in the home.

25. After considering all of the respective facts and arguments, the Court has determined that while plaintiffs' position is arguable, it does not address the fact that a reasonable accommodation has been offered yet the Blacks have chosen to refuse it in order to seek a permanent exemption or some agreement as to the cost of removing.

## D. Conclusion

. . . .

28. The Court further finds that Esquire has offered plaintiffs[ ] a reasonable accommodation as a matter of law.

The above findings by the circuit court were deemed to be merely orbiter dicta by the majority opinion. Clearly, these findings were not orbiter dicta. The defendant moved for summary judgment on two theories: (1) res judicata and (2) that an offer had been made to provide plaintiffs with a reasonable accommodation. Under the majority opinion, the circuit court had no authority to consider both theories, it could only consider one. The majority's reasoning simply is wrong and in direct conflict with Rule 8(e)(2) of the West Virginia Rules of Civil Procedure. It has correctly been observed that:

> Rule 8(e)(2) permits alternative, inconsistent and mixed pleadings. Variance in pleadings is encouraged to simplify the statement of claims and defenses, so as to bring about a complete resolution of conflict in the trial of a single civil action.

Cleckley, Davis & Palmer, *Litigation Handbook* § 8(e)(20), at 201–202.

Rule 8(e)(2) allows parties to plead alternative liability theories and defenses. Under the majority's ruling in this case, a circuit court may consider only one theory in making a ruling on a dispositive motion. With such reasoning, I strongly disagree.[3]

Based upon the foregoing, I dissent.

---

**3.** The other problem with this case is that it is being remanded for a trial on two issues that are

STARCHER, J., concurring.

I agree with the outcome reached by the majority in allowing this case to go forward for determination on the merits for two reasons. First, the lower court's *res judicata* ruling was inappropriate because it is clear from the record that neither Rebecca Black nor the Human Rights Commission was a party to the earlier restrictive covenant case brought by The Esquire Group against Mr. and Mrs. Black. Secondly, summary judgment was unsuitable because the issue of reasonable accommodation in this case involved numerous factual determinations which provided a genuine trial issue. I write separately to elaborate on the second reason.

The dissent attacks the basis on which the majority opinion reaches its conclusion regarding the reasonable accommodation issue, and asserts that this opinion "proclaims that summary judgment cannot be based on alternative grounds." I feel no such proclamation was made, nor was it intended to be made, in this *per curiam* opinion. As we declared in Syllabus Point 2 of *Walker v. Doe,* 210 W.Va. 490, 558 S.E.2d 290 (2001), "[t]his Court will use signed opinions when new points of law are announced and those points will be articulated through syllabus points as required by our state constitution."

The dissent takes exception to the majority's characterization of the lower court's alternative ruling. In reality, the lower court did dismiss the case on the basis of *res judicata* and then proceeded to rule as a matter of law on issues which involved undetermined material facts. The legal issues raised by the discrimination claim simply could not be resolved without inquiry into the facts and " '[a] motion for summary judgment should be granted *only* when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal*

*Ins. Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 7, *Mountain Lodge Assn. v. Crum & Forster Indem. Co.,* 210 W.Va. 536, 558 S.E.2d 336 (2001) (emphasis added). As the lower court did not sufficiently respect the interplay between the facts and the law in this case, its ruling on the alternative ground was irrelevant.

Determining whether an accommodation is reasonable involves a highly fact-based analysis. It follows that summary judgment would only be appropriate in cases involving reasonable accommodation where there has been adequate development of the relevant facts. In this case, we had an inadequate record and lack of any meaningful factual inquiry by the trial court which could support resolving the issue of reasonable accommodation. It is obvious that the "reasonableness" of an accommodation depends upon the circumstances. Relevant circumstances and facts in this case that are undeveloped include when The Esquire Group became aware of Rebecca Black's disability and whether other home owners were permitted to maintain fences on their property, and if so, for what purposes. During the oral argument of this case, it was more than obvious after pointed questioning by members of this Court that the circumstances involving the fences permitted within the subdivision were far from settled. Such critical factual issues require thorough development in order to give meaning to the protections provided by the Fair Housing Act. It is more than clear from the record of this case that the facts need further development in order to determine the reasonableness of the accommodation The Esquire Group proposed.

Both because Rebecca Black and the Human Rights Commission were not parties to the separate restrictive covenant suit, and because further inquiry regarding the facts is needed to clarify the application of the law, I concur with the majority conclusion that the

---

not supported by the law. Insofar as the defendant has agreed to allow the plaintiffs' to retain the wall so long as the child is handicapped, the jury must decide (1) whether federal and state law require a housing accommodation to remain after a handicapped person no longer resides in the home, or (2) whether federal and state law requires a landlord to compensate a handi-

capped person for the removal of an accommodation when the handicap ceases. I have been unable to find any law to support sustaining a favorable jury verdict for the plaintiffs on either issue. Consequently, the circuit court was correct as a matter of law in not allowing those two issues to go to a jury.

lower court's summary judgment determination be reversed and the case be reinstated on the trial docket.